Good afternoon. May it please the court. On October 13, 2017, a run-of-the-mill consensual encounter between a West Des Moines police officer and the defendant resulted in the discovery of a gun in the defendant's pants. The district court erred when it impermissibly and exclusively focused on the defendant's age and race and disregarded the seven non-exclusive factors test used by this court to determine if in fact a seizure actually occurred. Looking at the district court's use of race, the district court specifically noted that it took into consideration the defendant was a young man of color in determining that the defendant was seized. The government is unaware of any case in any court in which a court has found that the defendant's race is a factor to consider in a consensual encounter analysis. The Tenth Circuit recently addressed this very issue in the Easley case which was decided on December 26th. This involved a Greyhound interdiction bus case where the district court found that the defendant's race was a factor. The Tenth Circuit held that it was inappropriate to consider subjective characteristics like race as part of the court's reasonable person analysis for determining whether an individual has been seized. It's not practical and there's no uniform way to apply a reasonable person test that accounts for racial differences and this places an unrealistic expectation on police. In addition, the court unduly and improperly focused on the defendant's age. Contrary to the district court's repeated reference to the defendant as a boy, 27 times in fact, the defendant was 18. He was an adult at the time he illegally possessed a firearm. Was the age ever made part of the record? The age was not part of the record at the time of the suppression hearing, but the age was part of the record after the suppression hearing at a subsequent detention hearing. The court noted at the time that it wrote the opinion that the parties presented no direct evidence of the defendant's age, but it was undisputed that he was high school age and we agree with that. But it's also notable to look at what's not on the record in this case. Under the Juvenile Justice and Delinquency Protection Act 18 U.S.C. 5031, that applies if the defendant is not 18 at the time of the offense. In that case, under the procedure, the U.S. attorney would have to file an information. That wasn't done in this case. The United States attorney must sign a certification to proceed in federal court. Again, there's nothing in record that that was done. And also, the AOSA must file a motion with the court to transfer the juvenile to adult status and the court customarily would hold an evidentiary hearing on this. None of this was done. And the bottom line is our office doesn't prosecute juveniles. No one in recent memory can ever think of a time where we have proceeded in federal court against a juvenile. Well, the judge never found that he was a minor. As I understand it, he had a footnote that said it's uncontested he's high school aged. That's correct, Judge Collison. He referred to him as a young man one time. So do you really think it would have made any difference to Judge Pratt if he were 18 but a high schooler? The fact that the court noted cases involving minors, the fact that the district court referred to the defendant as a boy 27 times, an adolescent, young, high school age three times. Also, the court said specifically it is well established that a minor's age informs how a reasonable person in a suspect's position would perceive his freedom to leave. That's on page seven of the order. And also on page nine, the court also said, recognizing that minors often lack the experience, perspective, and judgment to recognize and avoid choices that can be detrimental to them. These are direct quotes from the judge where he's stating, referring to a minor. This is troubling to the government because the defendant, in fact, was not a minor despite the fact that the court referred to him as a boy and twice as a minor in the opinion. And the bottom line was age was never an issue going in until the district court brought it up in this suppression order. We had no idea this was an issue. It wasn't argued. It wasn't briefed at the district court level. The defendant initially argued the fact that the officer was in a marked car. He was in uniform. It was dark. He drove toward the defendant in his car, and a weapon was visible. Those were the reasons the defendant argued that it was a seizure, and the government responded based on what the defendant was alleging. In addition, the defendant did ask if the officer inquired about the defendant's age twice, in fact, and the officer did indicate, yes, I asked his age, and that age was, in fact, 18. So where does that leave us if your point is the judge mistakenly relied on a perception that this defendant was a minor? Well, that would be a clear error. That would be a factual issue. Right. But it leaves us, also, that the court didn't apply the traditional seven non-exclusive factors that this court uses to determine whether or not something is a consensual encounter. And the facts clearly show, and the court, in fact, cites those facts in its order, show that this was a hallmark, was an ordinary consensual encounter. So the government would ask that this court find that the district court erred in applying the test as to what is a consensual encounter, and find that this defendant was not seized under this court's precedent in determining Fourth Amendment seizure. You think that's a legal issue? Yes. As to whether or not someone is seized. Whether he, yeah, whether he's seized. Yes. Whether it was a consensual encounter. Whether or not it was a consensual encounter, if someone is seized, can be reviewed by this court de novo. As to what was said or done during the suppression hearing, the court, that's a matter of clear error, and the government contends that the district court erred when it went under the assumption that the defendant was 18. What about the pat-down search? The pat-down search. I understand your position to be that the defendant consented to the pat-down search. Now, is that a factual issue or a legal issue? It's a factual issue, Your Honor, and... Do we have a finding on that? The district court stated that the entire encounter was not consensual at its inception, nor did it become conceptual at the time prior to the defendant's arrest, and that's on page 9. Right, but does that, but that was all, that was referring to the whole event. Correct. The whole event was a seizure, but did he really make a separate finding if it was not a seizure, whether the pat-down was consensual? The district court stated that the coercive power dynamic was still present when the defendant accepted a ride in the on the record, but the government contends that any deference to the judgment of the district court on this issue is unnecessary because the record is such that only one resolution of the factual issue is possible, and that is that the defendant voluntarily consented to the pat-down, and this was testified to by the police officer as well as a second witness, so we don't only have the testimony of the officer, we have the testimony of the defendant's friend who also said throughout the record, yeah, he asked if he could pat us down, and Yoshi, which is Mr. Rodriguez's nickname, said that was fine, and if I could reserve my remaining minute. Thank you. Yes, you may. Mr. Hanson. May it please the court. This court should affirm the district court's order granting Mr. Rodriguez-Lozano's motion to suppress, and I think it makes sense to start with a discussion that Judge Colleton had with Ms. Shirley where the court's analysis should really focus on, and I think it makes sense to evaluate the most important part of the encounter between Officer Condon and Mr. Rodriguez-Lozano, and that was the pat-down. A pat-down is, of course, a search, and thus there must be Fourth Amendment justification for it, and I read the district court's opinion at page nine of the addendum to include a finding that the pat-down itself was not consensual. As Ms. Shirley said, the district court certainly focused its analysis on the entirety of the encounter between the two, but it also said that nothing about the pat-down was consensual as well, and that's a legally significant distinction here because that finding would be reviewed for clear error, and the district court, in our view, didn't err, and it certainly did not clearly err in finding the pat-down aspect of the encounter to be non-consensual. What rendered it non-consensual if the earlier conversation and the consent to or to accept the ride offer were, if we assumed that was consensual, what transformed the pat-down into a non-consensual search? Well, it is something that must be evaluated separately. I think if you look at the Supreme Court's opinion in Mendenhall, the court first evaluated whether the encounter between the officer and the defendant in that case was a seizure, but then went on to determine whether the search of the person's body was justified by voluntary consent. As far as whether... In a case like this where the pat-down is prefaced with, this is something I'd do for anybody that's going to get in my car, that's going to ride in the car, that doesn't seem particularly coercive or unreasonable for officers' safety concerns to have some assurance of passengers not being armed. Well, that gets into the question of whether Mr. Rodriguez Lozano or a reasonable person in his position would have felt free to terminate the encounter when Officer Condon offered the ride. Our argument for many of the reasons identified by the district court is that he would not have felt that way. But beyond that, I think it gets to Bumper v. North Carolina and whether Officer Condon's directive to Mr. Rodriguez Lozano to submit to the pat-down was something that he acquiesced to or if that was voluntary consent. So, is it your position he lacked capacity to consent? When you consider the totality of the circumstances which the court must do, I don't know if lacked capacity is the right way to put it, but under the specific circumstances that he found himself, any consent that he gave at that point for the pat-down search was not voluntary. And that time of the suppression hearing, the district court knew that Mr. Rodriguez Lozano was a high school student, knew from the conversation that he had with the officer that he played high school sports, knew from the conversation that he played video games, knew from the conversation that he engaged in sleepovers. Those are all things that very young people generally do more often than older people. At the same time, the district court knew exactly what Ms. Shirley is arguing. The district court would have known that this was not a juvenile court proceeding and thus Mr. Rodriguez Lozano must have at least been 18 years old at the time that he allegedly committed the crime. So, when you put those factors together, it's a reasonable inference that the district court did in fact know that Mr. Rodriguez Lozano was very likely 18 years old at the time of this encounter. Age is a very significant factor. Well, that's not really consistent with him, all his references to boy and minor. That's like, I mean, he does say once young adult, but he calls them boys throughout and refers to this case law concerning minors. Doesn't that suggest he was treating them as minors? I think specifically with respect to the reference to case law involving minors, I believe the district court was suggesting that... He would apply that to somebody who's 18? Well, there's an inverse proportion between your age and your ability to and I think the JDB opinion from the Supreme Court can be read in that fashion. I think JDB also supports the notion that age really defines the entire context of the situation. In JDB, you had someone being pulled out of class, there were school administrators involved in the encounter with the law enforcement officer, whereas here you had two young men or boys, however you want to put it, sleeping over at each other's houses. Those are things that young people do and that's an important contextual factor in deciding whether... Well, it may be an important contextual factor, but if we look at our law, there's a lot of debate right now about what kind of brain science ought to we be concerned about when we deal with youthful offenders. And when we talk about youthful offenders, we know that brain development does not, in males, does not become complete until no earlier than age 25, right? But the law has said that 18, well not always, ever since we reduced the age of majority to 18, the law has said that 18 is an age in which you're treated as an adult. And you're urging us to take sort of a whole new approach, which is we're supposed to apply some sort of sliding scale to consent based on an individual's age experience and treat them as if they were minors. Why should we do that? The court doesn't need to treat Mr. Rodriguez Lozano as if he's a minor, but it should treat him differently than if he were 38 years old, for example, because there is a correlation between age and your sophistication with regard to your knowledge of your legal rights. And I don't think the district court treated age as a singularly dispositive factor or race as a singularly dispositive factor. I don't think the district court even considered race in its analysis of whether there was a consensual encounter here. The district court appropriately considered age to be an important factor for the reasons I identified. It provides context and it provides some information about the legal, what the individual knows about his or her legal rights, but then also consider the other factors in the case. The fact that this encounter happened at night. The fact that this encounter happened as the officer told Mr. Rodriguez Lozano and his essentially suspects in a disturbance call. The fact that the officer was wearing his uniform, that he had a gun on him, he didn't brandish it. Those are all factors when considered in conjunction with the young age of Mr. Rodriguez Lozano that support the district court's finding of a lack of a consensual voluntary encounter with the officer. Now, with respect to race, I don't read the district court's opinion to show that he considered race in the ultimate disposition on the motion to suppress. The district court mentioned Mr. Rodriguez Lozano's race on page two of the opinion and kind of the factual narrative. Also mentioned his friend's race in that same section of the opinion and then at the very end in describing Mr. Rodriguez Lozano, called him a young man of color, but there was no analysis as to how race did or did not play a role in this encounter. So, I disagree with the government's argument that the race of Mr. Rodriguez Lozano played any role in the district court's disposition of the case. Now, we also argue that the court should consider the entirety of the encounter as well and conclude that it was a seizure for many of the same reasons identified by the district court. Again, it's a totality of circumstances test regardless of whether the court analyzes just the pat-down itself or also the entirety of the encounter and those those factors do not suggest that the district court erred. Unless the court has any other questions I would ask you to affirm. What part of page nine do you read to be a finding on whether the pat-down was consensual? The last sentence? Yes, yes your honor. I believe it's the very last sentence of that last paragraph. The encounter was not consensual at its inception nor did it become consensual at any time prior to defendant's sentence preceding that mentions the pat-down as well. Accepting of the pat-down which I would submit is an odd way to to phrase it but my my view of accepting of the pat-down is accepting of granting consent for the pat-down. I would agree it's not it's not fleshed out in the way that I would like but I do think inherent in the district court's overall finding regarding the encounter is a finding of no voluntary consent for the pat-down. Well, I'm just wondering if it was if that if that is a finding that it was made in the context of a legal conclusion that he'd already been seized and wouldn't that affect the analysis of what of the consent question because you see what I mean? It does affect. So if so if he's making a finding that there was no consent but he's doing it on the premise that the man was seized at the time then is that really a that's isn't it infected with legal error if we say he wasn't seized? If you say he wasn't seized you may need to remand to the district court to decide the question of whether if he was not seized if the pat-down was voluntary. I don't read the district court's opinion in that way but I understood it could have been better fleshed out on the two separate questions. Thank you. Thank you, Mr. Hanson. Ms. Shirley, your rebuttal. May it please the court. I would like to point out to the court that the pat-down was not a directive. It was a condition of getting a ride from the police officer and as I stated before the record is such that there's only one resolution of the factual issue and that is that the defendant did voluntarily consent to the pat-down. On page 22 of the transcript the police officer says it's his policy and practice to do this pat-down if people get in his car. I asked what would happen if they didn't want to ride. The officer stated they would have been free to go. I would have said all right have a good night. I then asked you asked if they would be patted down. The officer said yes. I asked what were the responses. The officer said that he didn't recall if the responses were verbal or non-verbal but it was an understanding to where Mr. Rodriguez actually walked to the area where the officer was going to pat them down and he put his arms up without being asked as to be patted down and I asked the officer did you ask him to put his arms up and he said no. But don't we have to go by what the facts were found what facts were found by the district court? You're reading from testimony. Correct. Aren't we limited I mean unless there's a clearly erroneous finding. Right. He says Condon said okay I just have to pat you guys down for my safety. He didn't find that Condon asked them for permission to pat them down. I believe when I'm looking at page four. He did but the court felt it was ambiguous. Pardon me? I believe that the court did find that the officer did ask if he could pat them down. Well I'm looking at the second paragraph on page four. According to MA after the boys agreed to ride in the car Condon said okay I just have to pat you guys down for my safety. The boys did not protest the pat down. You think somewhere else he found that it was more of a request or you think that is a request? Following that it says Condon testified both boys communicated in agreeance to a pat down but he did not recall whether their acquiescence was verbal or non-verbal. MA the friend testified that he thinks they both said yeah. Yeah I know but my problem with that is that's just a recitation of what they said. That's not really a finding as to what happened. I mean we can read what they testified to but. Correct. We need a finding as to whether they communicated in agreeance or said yeah or I don't know if we have a finding on that. Right and if I may continue I'm out of time. You I believe that it's evident in the in the transcript what was said and when the court's going through writing its order I interpreted the court's recitation of the facts as to what they were accepting as the facts. You think when he recited this testimony he was finding that it was true and that it happened? Yes I do. I see well that's that's not the best way maybe to make a we can look at it that way and see. Thank you. Thank you. Thank you Ms. Shirley. Thank you also Mr. Hanson. We appreciate both of you coming today and certainly accommodating our request to have your arguments today and we wish to take your case under advisement and we'll render decisions prompt as possible. Thank you. Thank you. Madam clerk does that conclude our arguments for this hearing?